# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5632 | **DATE** | **AUG 2 3 2000** |
| **CASE TITLE** | | Nationwide v. Singleton | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐   Filed motion of [ use listing in "Motion" box above.]

(2)  ☐   Brief in support of motion due _____.

(3)  ☐   Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐   Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐   Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐   Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐   Trial[set for/re-set for] on _____ at _____.

(8)  ☐   [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐   This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)  ■   [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, the counterdefendants' motion to dismiss Singleton's amended counterclaim [Doc. #11-1] is granted.

(11)  ☐   [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | **AUG 2 5 200** | **23** |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | 15 | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| dc(lc) | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 AUG 24 PM 4:01 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NATIONWIDE ACCEPTANCE )
CORPORATION, )
        Plaintiff, and )
        Counter-Defendant, )
        v. )
MARKOFF, KRASNY, GOLDMAN and )   No. 99 C 5632
GRANT, and individually, HERMAN )
GRANT, )
        Counter-Defendants, )   HONORABLE DAVID H. COAR
        v. )
DOROTHY SINGLETON, )
        Defendant, )
        Counter-Plaintiff. )

DOCKETED
AUG 25 2000

## MEMORANDUM OPINION AND ORDER

Nationwide Acceptance Corporation ("Nationwide"), by their attorneys, Markoff,

Krasny, Goldman, and Grant ("Markoff firm"), and Herman Grant ("Grant"), individually,

(collectively, "counterdefendants") initiated an action against Dorothy Singleton ("Singleton") to

collect an outstanding debt. In response, Singleton filed a counterclaim naming Nationwide, the

Markoff firm, and Grant as counter-defendants. Singleton removed the action, originally filed in

the Circuit Court of Cook County, Illinois, First District, to this court. The counterdefendants

23

now move for dismissal of Singleton's amended counterclaim. For the reasons, discussed herein, the counterdefendants' motion is granted.

## I. Factual Background

Singleton is an unsophisticated consumer who entered into an installment loan contract with Nationwide. Nationwide, Singleton contends, retains common ownership and control of the Illinois Founders Insurance Company ("Founders"), other insurance companies, and Wix Auto Company, Inc. ("Wix Auto"). Singleton's countercomplaint mounts the following general attack on these entities: "Together, through a shared or common purpose, their activities involve the lending, auto sales, and insurance, as alleged, under the scheme or artifice alleged, within the meaning of the mail fraud statute, 18 U.S.C. § 1341, so as to deceive the borrower-buyer, and to pursue an exorbitant, unconscionable, or non-existent debt by the financing and sale of used automobiles which are no longer operable, [and] charge for worthless service and unnecessary insurance."

From what the court can piece together from the countercomplaint, the details of the alleged wrongdoing are as follows. Nationwide regularly sent mailings to Singleton and others in an attempt to induce current borrowers to refinance their loans. On April 10, 1997, Singleton executed a note with Nationwide. This note apparently refinanced the balance of a pending obligation. The total amount financed was $1,739.18. The note also reflected a finance charge of $923.91, computed at an annual percentage rate of 43.0 percent over a period of 24 months. In addition, Singleton was charged for insurance placed with Founders and other miscellaneous

expenses. Nationwide failed to disclose to Singleton that she incurred greater charges under this refinancing plan than she would have had she taken out an entirely new loan.

With newly financed cash in hand, Singleton was "steered" to Wix Auto, located on the lot adjacent to Nationwide. Singleton proceeded to purchase an automobile sold "as is." The down payment for the car came from the proceeds of the Nationwide refinanced loan. Not surprisingly, Singleton bought a lemon. When she tried to return the car to Wix Auto, she was told that she could not get out of her contract, and that she had to accept a substitute vehicle.

Singleton executed another note dated April 11, 1997, for the purchase of a 1990 Chevrolet Cavalier. The down payment for the vehicle again came out of the proceeds of the Nationwide loan. Yet again, Singleton incurred greater finance charges on this note than she had incurred on the previous note. She was also charged a steeper rate for insurance, but of course, none of this was disclosed to her. Nationwide possessed the first lien on the second car. When the Cavalier also proved to be inoperable, Singleton returned the car to Wix Auto. In a "Notice of Repossession" mailed to Singleton, Wix Auto stated that if Singleton paid a repossession fee and redeemed the vehicle, it would retain all monies paid to date, including the down payment, without charging her for any deficiency.

In 1998, Nationwide, represented by Grant and the Markoff firm, initiated a collection action against Singleton in the Circuit Court of Cook County. Rather than identifying itself as the loan ordinator in its original complaint, Nationwide erroneously identified itself as the assignee. The state court permitted Nationwide to amend its initial complaint to reflect Nationwide's correct status. The error was not corrected, however, until Nationwide's submission of its second amended complaint.

On August 30, 1999, Singleton brought a counterclaim against Nationwide, the Markoff firm, and Grant, and removed the case from the state court to this court. In the meantime, on April 20, 1999, Singleton had filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois. Her petition did not schedule the instant counterclaim as an asset or as exempt property. On August 5, 1999, the bankruptcy court entered a discharge order. On August 9, that court discharged the Trustee and closed the bankruptcy estate.

## II. Discussion

From the above allegations, Singleton, on behalf of herself and a putative class, sets forth claims under the Fair Debt Collection Practices Act (Count I), the Racketeer Influenced and Corrupt Organizations Act (Count II), and the Illinois Consumer Fraud & Deceptive Practices Act (Count III). The counterdefendants bring separate motions to dismiss. Nationwide urges dismissal of all counts based on Singleton's lack of standing to prosecute this counterclaim. In addition to advancing a the standing argument, the Markoff firm and Grant maintain that the doctrine of judicial estopped warrants dismissal of the instant action. Both sets of counterdefendants also attack the sufficiency of Singleton's amended counterclaim. Because the court finds that Singleton lacks standing to proceed, the court will not separately address the additional objections raised by the counterdefendants.

When a debtor files a bankruptcy petition, "virtually all property of the debtor at that time becomes property of the bankruptcy estate." In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993). Section 541 of the Bankruptcy Code ("Code") creates a bankruptcy estate comprised of "all legal

-4-

or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (West 2000). The bankruptcy estate encompasses "every conceivable interest of the debtor," whether it be future, non-possessory, contingent, speculative, tangible or intangible. Yonikus, 996 F.2d at 869. Importantly for purposes of the instant case, the bankruptcy estate includes causes of action that accrued prior to the filing of the bankruptcy petition. See In re Davis,158 B.R. 1000, 1002 (Bankr. N.D. Ind. 1993); Tuttle v. Equifax Serv., Inc., No. 3-96-948, 1997 WL 835055, at *2 (D. Conn. Jun. 17, 1997) (citing Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 707 (9th Cir. 1986); Seward v. Devine, 888 F.2d 957, 963 (2d Cir. 1989)).

There are some exceptions to the general rule that the debtor's property reverts to the bankruptcy estate. Sections 541(b) and 522 of the Code provide for exclusions and exemptions, respectively.[1] See 11 U.S.C. §§ 541(b), 522. Additionally, § 554 provides for abandonment, whereby property of the bankruptcy estate, both scheduled and unscheduled, is removed from the estate and returned to the debtor. Tuttle, 1997 WL 835055, at *2. Upon notice and a hearing, the trustee, the debtor in possession, or any other party in interest may seek abandonment the estate's assets. See 11 U.S.C. § 554(a), (b).

In any case, the Bankruptcy Code requires debtors to schedule all assets. See 11 U.S.C. § 521(1). Upon the closing of the bankruptcy case, if scheduled property is not administered, it is deemed "abandoned" by the estate by operation of law. See 11 U.S.C. § 554(c). If, on the other hand, unscheduled property is not abandoned pursuant to § 554, that property remains part of the estate even after the closing of the bankruptcy case. See Welsh v. Quabbin Timber, Inc., 199

---

[1] In contrast to the expansive scope of § 541(a) delineating the reach of the bankruptcy estate, these exceptions are narrow in scope.

B.R. 224, 229 (D. Mass. 1996); Davis, 158 B.R. at 1002; Tuttle, 1997 WL 835055, at *2; 11

U.S.C. § 554(d) (unscheduled property not subject to presumption of abandonment).

Here, Singleton filed for Chapter 7 bankruptcy on April 20, 1999. At that time, the

bankruptcy estate acquired her potential cause of action against the counterdefendants. See §

541(a). Even if Singleton failed to list this action in her bankruptcy petition, it nevertheless

became property of the estate pursuant to § 541(a)(1). See Tuttle, 1997 WL 835055, at *2

(observing that causes of action belong to the estate despite a debtor's failure to schedule the

claim). Singleton seeks to remove this counterclaim from the estate by asking this court to deem

it exempt and/or abandoned. On January 18, 2000, approximately a week after being served with

the counterdefendants' motion to dismiss setting forth the standing and estoppel arguments,

Singleton, realizing the validity of the counterdefendants' arguments, filed an amended schedule

and statement of financial affairs with the bankruptcy court. These amended filings disclosed the

instant action. Singleton also wrote to the former trustee of her estate to request that he abandon

her claim.

The court declines to grant Singleton the relief she seeks. Whether the instant claim is

exempt and/or abandoned is a question properly presented to the bankruptcy court, not this court.

Singleton, however, has not sought to reopen her bankruptcy case. See 11 U.S.C. § 350(b)

(providing that the bankruptcy case may be reopened if further administration is necessary). Nor

has she requested reappointment of a trustee, even though a trustee, currently authorized to act on

behalf of her estate, must consent to abandonment of her claim. Similarly, Singleton has failed

to file a motion seeking the bankruptcy court's exemption of her counterclaims.

Even if this court were authorized to deem the counterclaim abandoned, the court would find the claims were not abandoned properly as Singleton has failed to notify creditors of her amended filing, as required by § 554(b). <u>See</u> Norton Bankruptcy Law and Practice, 2d § 53:14 (outlining notice procedure under Bankruptcy rule 6007(a)). Singleton also points out that she merely retains a nominal interest in this counterclaim. Indeed, abandonment may be justified where the property is of inconquential value to the estate or burdensome to the estate. <u>See</u> 11 U.S.C. § 554(a), (b). Whether or not Singleton's claim qualifies for abandonment, however, is a moot point in light of this court's determination that it is not authorized to entertain the question and Singleton's failure to follow the correct notification procedures. To the extent that Singleton raises the issue to justify her failure to disclose, her argument fails. "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." <u>Yonikus</u>, 996 F.2d at 871.

In sum, Singleton's unscheduled claims remain part of the estate, even after the closing of the bankruptcy case. <u>See</u> <u>Davis</u>, 158 B.R. at 1002. Pursuant to the Bankruptcy Code, the real party in interest in the instant case is the trustee, who is deemed the representative of the estate. <u>See</u> 11 U.S.C. § 323 (imputing upon the trustee the "capacity to sue and be sued"); <u>Davis</u>, 158 B.R. at 1002. Consequently, Singleton is effectively divested of standing to pursue her claims against the counterdefendants. <u>See, e.g.</u>, <u>Rosenshein v. Kleban</u>, 918 F. Supp. 98, 103 (S.D. N.Y. 1996) (dismissing plaintiff's case because of his failure to schedule claim in Chapter 11 proceeding); <u>Welsh</u>, 199 B.R. at 229 (holding that plaintiff's undisclosed claims remained in the bankruptcy estate after discharge and cannot be asserted by plaintiff); <u>Tuttle</u>, 1997 WL 835055, at *2 (finding that plaintiff did not have standing to assert FDCPA claim undisclosed in

bankruptcy); <u>Dailey v. Smith</u>, 684 N.E.2d 991, 994, 292 Ill. App. 3d 22, 25, 225 Ill. Dec. 1000,

1003 (Ill. App. Ct. 1997) (concluding that when a claim becomes a part of the bankruptcy estate,

the bankruptcy trustee alone has standing to pursue the claim).

Federal Rule of Civil Procedure 17(a) requires "[e]very action [to] be prosecuted in the

name of the real party in interest." Fed. R. Civ. P. 17(a). It follows then that the trustee, and not

Singleton, may prosecute this case. Before dismissal of a case on these grounds, Rule 17(a)

provides debtors with a reasonable opportunity to ratify the action by joining or substituting the

real party in interest. <u>See</u> Fed. R. Civ. P. 17(a). The court finds that these procedural protection

have been afforded to Singleton. On January 18, 2000, approximately a week after the

counterdefendants' motion to dismiss raised the issue of improper standing , Singleton, through

her counsel, took steps to rectify her situation. Seven months later, the court is not satisfied that

Singleton's claim was properly abandoned, and the court has not received notice that the trustee

ratified Singleton's commencement of this case.[2]

The correct approach would have been for Singleton to reopen her bankruptcy case,

obtain the bankruptcy court's approval of her amended schedule, and allow her creditors an

opportunity to benefit from any recovery in a case initiated by the trustee or, in the alternative,

seek abandonment of the claims so that she herself could bring these counterclaims. However,

no proper application has been made to the bankruptcy court, and Singleton has not requested a

---

[2] In any case, the former trustee could not ratify this case until and unless Singleton's bankruptcy case was reopened and he was reappointed to represent the estate. <u>See</u> <u>Davis</u>, 158 B.R. at 1003 (rejecting former trustee's ratification because he had been relieved of his duties upon the closing of the bankruptcy case).

stay pending the bankruptcy court's adjudication of such an application.   Accordingly, her

counterclaim must be dismissed.

### III. Conclusion

For the foregoing reasons, the counterdefendants' motion to dismiss Singleton's amended

counterclaim [Doc. #11-1] is granted.

Enter:

David H. Coar

United States District Judge

Dated:   AUG 2 3 2000